Good morning, Your Honor. May I begin, Mr. Trojan? This is Joseph Trojan for the appellant, Arcona. This is a counterfeiting case. My client, Arcona, has registered the trademark, I Do, as a word mark. Just six letters. He registered it for eye cream. The accused product is I Do, the identical letters on eye cream. That, by definition, is counterfeiting. And the lower court did not find counterfeiting, found that there was no confusion, because it decided to consider the context in which the I Do appears on registration. That's improper as a matter of law. Counterfeiting, you look only to what is registered and what the goods are. If both of those match, you have a case of counterfeiting. But if you look at the statute, it seems like Section 114 that even for counterfeiting, you do need a showing of likelihood of confusion. The likelihood of confusion is presumed when you have counterfeiting. Likelihood of confusion is the test, is the, was the way counterfeiting used to be considered as with any type of trademark infringement. Any hard and variety type of infringement, counterfeiting, any counterfeiting type of infringement. You had to go through an entire analysis of likelihood of confusion. Congress in 1984 realized that the counterfeiting problem was so huge, there needed to be a special statute to address that narrow category of trademark infringement. And so they passed the 1984 Counterfeiting Act statute. And that, in that act, they defined counterfeiting as a special case of trademark infringement. And you meet that standard if you have, if the mark is substantially indistinguishable from the registered mark, and the goods are the same. And that's what we have in this case. So going and layering on the likelihood of confusion factors coming to play in a traditional garden variety trademark infringement case means that you're ignoring the change to the law that Congress intended in 1984, because of the huge problem. Sorry, go ahead. I just wanted to ask, do you agree though, that your causes of action is under 15 U.S.C. 1114, that statute? We had two, we had, we originally had two causes of action that include, one was for garden variety trademark infringement. And this separate, if you look at the complaint, there's a separate claim specifically for trademark counterfeiting. And it refers to the counterfeiting. I can't, I apologize, because I don't remember the actual statute right at the moment. But we, I do know that we had two different ones. And to get up on to appeal sooner, when the court found that entered summary judgment, and there was this remaining issue on the other cause of action, we dismissed the other cause of action. So this is purely a counterfeiting claim. And that's how it's been litigated and addressed the entire process. And the consequence of ignoring that, if a counterfeiting case, you can look at the trade dress of the product, then someone can copy Chanel and change the fabric design on the purse, but use the trademark and claim it's their own. Or someone can go and a Chevrolet, but if I put my house mark in front of Chevrolet, suddenly, I'm the owner of Chevrolet. That's those cases, though, I mean, the mark, they're so strong, Chevrolet, Chanel, that they will, you know, you may be able to show a likelihood of confusion, that counterfeits, I'm not sure if that analogy works. Whereas if I do, you know, I don't know how strong that mark is such that it would cause confusion when there's so many other differences. You, it's always instructive to look at the extremes. But I understand what you're saying. We're not those marks may be protected by anti dilution statutes as well. And so their fame is addressed in the Lanham Act, under the anti dilution provisions that recognize that if the mark is famous, it gets special protection. But the, there's nothing in the anti counterfeiting statute that would suggest that you can, your rights to access the anti counterfeiting provisions are dependent upon the fame of the mark. The only place the fame of the mark is ever addressed in the Lanham Act is with respect to anti dilution. And so, you know, it's certainly a factor when it comes to likelihood of confusion. But the whole point of counterfeiting is that Congress said this is an, this is a, we are passing a special statute for specific reason. And they made it such that, for example, under a normal analysis, intent is a factor. In 11-7, in section 11-16 of the statute, it precisely says in counterfeiting cases, you do not consider intent. It doesn't matter whether the person knew about the registration or didn't know about the registration. It's not a consideration. Whereas if you're doing a normal trademark, garden variety trademark analysis, the likelihood of confusion intent is one of the factors. So Congress was rejecting that standard when it, but counsel, I was looking at your complaint. It does look like, you know, your cause of action was under 11-17B and 11-17B specifically references 11-14-1A, which says that there's a likelihood of confusion elements to the claim. It doesn't, right. But it's kind of like, if you look at what was carved out of this statute, it's saying 11-17 has many parts to it. But if that interpretation was correct, then what's left of the counterfeiting statute? Nothing. The whole point. It seems like it's just adding more penalties and triple damages and attorney's fees. And so it seemed to be more about damages versus what's the cause of action. Well, then that would ignore the fact that it gave a definition. It said, what are we defining as a counterfeit market? You're the court just referred to. How do you qualify for the damages for counterfeit? You qualify by showing that the mark is substantially indistinguishable from the registered mark and showing that the goods are identical. Don't you have to also show that it's is a spurious mark, which is identical with or substantially indistinguishable from a registered mark? Correct. And that's what we have in this case. We have the identical mark. An identical mark is definitely spurious because it is identical and it's identical. So what role, going back to a question Judge Lee asked, what role does the strength of the mark in the whether or not the mark itself is counterfeit? And I think you're arguing that there is no intent regarding counterfeiting. Correct. That's written into the statute in 1116. You cannot consider that whether the person knew about the mark or they knew about the registration. It doesn't matter. And so it's absolute, the statute was intended to put this multi-billion problem, put a hole, try to provide a special remedy for counterfeiting. And so it said, we're carving out, it's very easy for a potential defendant to avoid counterfeiting. Just don't use the identical mark. Don't use it on the identical goods. So it's this very narrow exception so that this problem of counterfeiting could be addressed. And it wasn't just for famous marks. It was for any trademark that was registered. So you look to the registration and you compare it to the infringement. And that's the end of the analysis. If you conclude that it's not identical, then it's not, then everything goes, all of that remedy goes away. And you have to go with the traditional mark. Counsel, the statute does refer to spurious. Is that, does that mean identical? To me, it means something more than identical. It means deceptively identical. No court has come to the conclusion that it means more than identical. It's identical. Spurious mark is a mark that's a substantially identical. But then what does spurious do because the statute also refers to identical? The statutory, the language, there may be overlap in the language, but it doesn't change the fact that Congress was focused on this concept that we're making counterfeiting something that's identical. Spurious includes both being identical and being on the same goods. If you're putting it on the identical goods with the identical mark, it doesn't matter if it's famous, but nothing else matters. You've now engaged in counterfeiting. Would you agree in normal English and everyday English, when we use the word spurious, has some sort of falseness or deceit behind it? Well, falseness, the deceit is the fact that it's identical. Absolutely. It is deceiving to the public to see a pharmacy product with another person's trademark on it. There is deception. And that's what the statute in the case law says. It was intended to presume under those because it looks like they own the mark. It's pharmacy's trademark and it's not. And so, and so that's the issue. That's really the issue. I would like to reserve the balance of my time for rebuttal. Great. Thank you. Mr. Fraser. Good morning, Colin Fraser for the respondents. Thank you for your consideration today. Appellant fundamentally misunderstands the counterfeiting. Counterfeiting has three elements as this court has recognized so far, the use of a spurious mark that is identical or substantially indistinguishable from a registered mark and is likely to cause confusion, mistake, or deception. This standard arises from the civil action for counterfeiting in section or title 50 USC 1114. And in the definition of counterfeit in section 1127, Arcona applies a new standard outside the Lanham Act by rewriting the first element spuriousness and presuming existence of the third element confusion. Arcona then attempts to establish counterfeiting, which is the first degree or hard core trademark infringement by cropping two words from pharmacy's product and analyzing them in isolation, not as they would appear in the marketplace. Appellant didn't provide the court with an image to show the marks in context, but when the marks are analyzed using the correct test, it's clear that the district court correctly found pharmacy was not trying to pass off its The marks are not substantially indistinguishable and no reasonable consumer would be confused that Arcona is the source of pharmacy's product. For a counterfeit claim, how does a court determine whether there's a likelihood of confusion? Do they use a reasonable consumer standard or, for example, the trademark infringement context and Ninth Circuit uses the so-called speech craft factors? Does applying counterfeit or is it some other standard? So the likelihood of confusion test under counterfeiting is analyzed using the same sleek craft factors that are applied in trademark infringement, which makes sense because counterfeiting is a form of trademark infringements, just an extreme form of it. And likelihood of confusion is the key element of the counterfeiting test in this respect. And in the Ninth Circuit, we use the sleek craft factors in order to judge a likelihood of confusion. So Arcona's first and maybe largest mistake. Is there a problem that the district court did not go through the sleek craft factors? Your Honor, I don't believe so. The district court analyzed the substantial indistinguishability of the marks and found that they were not met. So it could dismiss the counterfeiting claim for Arcona's failure to establish two of the elements of the test. And the court did go through some analysis of a likelihood of confusion test when it was comparing the marks and deciding that they were not likely to confuse a consumer. I believe the district court said it was implausible that a consumer would be confused by these two products. Did the district court make that analysis under the counterfeiting part or the likelihood to confuse part? The district court did not apply sleek craft. It didn't cite the sleek craft test when it was making that analysis, but the same test applies when analyzing the likelihood of confusion. Okay. So counsel, the district court said without determining the specific level of similarity between I do products, the court concludes that no reasonable jury could find that the defendant's I do product is a counterfeit of plaintiff's I do product. Did the court just jump to without considering whether it was counterfeit or not and just jump to the comparison of the products themselves? And if he did, is that appropriate under the legal standards? Your Honor, the court applied the test under section 1114 and when making the comments that you just referred to was analyzing the substantial similarity or indistinguishability of the marks and finding that they were not substantially indistinguishable. There was a lot of differences between Arcona's product I do and pharmacy's product I do total eye cream with echinacea green envy activated by sucoric acid. It was essentially stating a rule in the in isolation and use them not as a consumer would see them in the marketplace, but by in the abstract, that approach would eliminate all context, including source identifiers on pharmacy's product and packaging, like the housemark, the logo, the picture of its co-founder and many other descriptions of the pharmacy story and the product line. Arcona's standard here would be a standard that would, in a sense, make counterfeiting less rigorous than trademark infringement, which of course compares marks in context. Arcona's arguments that marks are compared in isolation or that there's a schism over whether to compare the marks and the products both incorrectly assumes that counterfeiting could ever be analyzed by ignoring the mark's context and the consumer's perspective. This court consistently has held that trademarks are not analyzed in isolation. They're analyzed the way marks are encountered in the marketplace. The court called that an axiom of its trademark analysis in the entrepreneur media versus Smith decision, where it found the term entrepreneur illustrated was not sufficiently similar to the similarly in Lindy pen versus BIC pen. This court found no infringement where both parties use the same word mark auditors on the same goods pens stating that the pens dissimilar appearance, the dominance of the company marks and logos on the pens themselves and on all packaging and promotional material and the dissimilar and distinctive packaging and advertising has been like, where do we see that in the statute? I'm looking at the definition of counterfeit, which is at 1127 and it says a conspiracy mark, which is identical or substantially indistinguishable from a registered mark. So when we're looking at whether something is counterfeited, the statute doesn't say anything about context. So you're the counterfeiting test. It's found in two parts. The civil action for liability in 1114 one eight that we spoke about earlier. And then that cross references the definition of counterfeit in section 1127 that you just referenced. And together you get this three part test for counterfeiting and all night circuit decisions have analyzed that test using a complete context and the perspective of a consumer as the baseline for trying to determine whether things are substantially indistinguishable or there's a likelihood of confusion. It seems hard to imagine how one could analyze similarity or confusion without looking at the marks in context. I like to look at the central district's decision in the Gibson Brands case, where it found that if the purpose of a trademark is to help consumers identify the source, it would be incongruous to conclude that defendant had counterfeited Gibson's product in that case by selling a product that was marked on the front and the back with a housemark as coming from the defendant company. The court found that that would make no sense to find a counterfeiting cause of action there because it was clear in context the way consumers going to look at the mark and the way marks are used, that this was not coming from plaintiff's company. The legislative history is clear that the importance of context in analyzing counterfeiting is maybe one of the most important aspects of the analysis. The joint statement where Congress stated its intent in passing the Counterfeiting Act of 1984, it explains that it would be virtually impossible to establish counterfeiting if goods are conspicuously labeled to identify their true source, even if it included the registered mark of a third party. And so the district court applied the correct standard here by looking at the party's marks in context and as they appear in the marketplace. To address the district court's analysis on that issue, I think it's helpful to look at the pictures of our Kona's and Pharmacy's products that we included on pages 6 and 11 of our answering brief, where you'll see we've enlarged images of the outer and inner packaging as well as the jar that Pharmacy's product is sold in and did the same with our Kona's outer packaging and pump. You can see images that there are 10 source identifiers on Pharmacy's packaging that make it implausible that a consumer would believe Pharmacy's product somehow came from our Kona. Those include the housemark in a large reflective font, descriptions of the pharmacy story, and a narrative explaining Pharmacy's product. The notion that Pharmacy would have copied the phrase I do to trick consumers into believing they were getting our Kona's product and then include 10 references to Pharmacy, the prominent housemark and logo, and the name and picture of a co-founder is nonsensical. Is it possible to have a counterfeit but that is not likely to deceive and therefore there's no liability or is it like 11.7 if you have a counterfeit then you're liable? So I think there's confusion here. They're confusing the definition of the term counterfeit in 11.27 with the cause of action for counterfeiting in section 11.14. The definition of a counterfeit and still not have liability because you don't have a likelihood of confusion. So I think that answers your honor's question. Can you answer the question of what spurious does in 11.27? Does it just mean identical? No, obviously the statute itself includes the words spurious and identical or substantially indistinguishable so it's using them separately and they must be given a separate meaning. Spurious goes to the heart of counterfeiting the effort to pass off a fake as if it were the genuine article. Consistent with that Congress's stated intent in defining counterfeit was to regulate deceptive and misleading use of marks to prevent fraud and deception. Consistent with that guidance district courts in this circuit often quote McCarthy on trademarks to describe counterfeiting as the act of producing or selling a product with a sham trademark that is an intentional and calculated reproduction of the genuine trademark. The fourth circuit in the Southern District of New York often quote Black's Law Dictionary to define spurious as deceptively suggesting an erroneous origin. Does that mean that there's an intent element to the word counterfeit? It means that there's an effort to pass something off as if it were the genuine article to trick a consumer. That's what the Audemars Piguet decision out of Southern District of New York found when they said that the essence of counterfeiting is that the use of the infringing mark seeks to trick the consumer into believing he or she is getting the genuine article. And Arcona is looking at the wrong statute for this. It looks at section 1116 which empowers courts to enjoin the violation of trademark rights but that statute is irrelevant to the counterfeiting tests under section 1114 or the definition of counterfeit in section 1127. Section 1116 even states that its definition of counterfeit mark applies only as used in section 1116. Is there a little bit of a tension between 1114 and 1127 because 1114 itself doesn't have an intent requirement. 1127 maybe suggests quasi possibly some intent and you know it's doesn't have an intent requirement because it looks like 1117 gives you triple damages if there's an intentional counterfeiting. So I mean it's I know you're touching upon it but you know how do we reconcile 1127 and 1114 in terms of intent? So I don't think they need to be reconciled. I think they're consistent because 1114 cross references the definition of counterfeit in 1127 and then that's how you get your three-part test for counterfeiting liability under 1114. And the fact that 1117 provides for enhanced damages if there's willful counterfeiting is a separate inquiry from wondering whether someone is deceptively trying to consumer under the spurious element of the in many cases where they analyze the willfulness to get enhanced damages. What they look at is where a defendant knows that the market counterfeit or that the someone else is using the same mark and then they will receive a cease and desist letter and then continue after being warned that they're infringing someone else's mark use that product in order to trick consumers. So while both look at intent it's somewhat different deceptive use of a mark is different from willful counterfeiting that will get you enhanced damages. Thank you. Unless other members of the panel have any questions? No. We'll move to Mr. Trojan for a rebuttal. You're on mute. Thank you. Council referred to Lindy Penn as a key case that they rely upon. Lindy Penn was issued in February of 1984 before the trademark counterfeiting statute was passed. And so Lindy Penn is no longer a valid law with respect to the statute that did not even exist at the time that the court issued that decision. With respect to this conflict that we're talking about different parts of the statute I think we need to go back to fundamental statutory interpretation. And so where a statute has a general provision and has a specific provision specific provision controls. So to the extent that there may be a statute may refer to a general provision in this case it does but it then carves out a limited exception with respect to the definition for counterfeiting. And so the specific provision is the one that controls what the definition of an infringing article is. It was a tremendous amount of time spent claiming that the comparison we're making is wrong. The comparison is absolutely correct. We do not take the registered mark and compare it to the trade dress. It's not a trade dress registration. It's a trademark registration for a word. And so what we the comparison is not to the entire package because it's not it's not registered for that. It's only for the word. Courts have said that when you refers to five or ten references to the fact that the product is from pharmacy. Courts have referred to using a house mark to try to make the distinction when you're using the identical mark someone else's identical mark is making a mockery that's the language in cases a mockery of a trademark counterfeiting law. And that's exactly what they're doing now by by co-opting the term. They're not just trying to trade off the goodwill. They're trying to own that trademark that they don't have a right to. They're trying to make it their own. The counterfeiting statute does not is not limited to just people who are trying to trade off somebody's goodwill. It doesn't permit somebody who's eluding the strength of your mark by going and claiming it as their own and then advertising it so that consumers shift and start thinking it's a pharmacy trademark. That's simply wrong. And so the comparison that we're making is absolutely correct. Just statute says look at what's registered and compare it to what they're using. And so this contact and clearly Congress didn't mean to use that context that he's talking about because it's after first to intent and the statute says don't look at intent only the criminal provision provided for intent and Congress considered putting that in the civil statute in denial. Thank you. Thank you. Case has been submitted and you're adjourned for today. Thank you. Thank you. All rise. This court for this session stands adjourned.
judges: Lee, Bumatay, Molloy